UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BP CHEMICALS LIMITED,               )
                                     )
            Plaintiff,               )
                                     )
      vs.                            )        Case No. 4:99CV323 CDP
                                     )
JIANGSU SOPO CORPORATION            )
(GROUP) LIMITED, et al.,            )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

Defendant Jiangsu Sopo Corporation ("SOPO") seeks dismissal of this case on the grounds of international comity and forum non conveniens, or a stay on the grounds of international abstention. SOPO also seeks a judgment on the pleadings or summary judgment on plaintiff BP Chemicals's Lanham Act and Missouri Uniform Trade Secrets Act claims.

I previously denied SOPO's motion to dismiss for forum non conveniens, but SOPO argues that things have changed since that decision. Specifically, SOPO argues that BP's filing suit against it in a Chinese court shows that the Chinese forum is adequate and more convenient. I disagree, and continue to hold that the courts of China would not provide an adequate forum for BP's claims against SOPO. Nor do I find that the circumstances of this case justify a stay of this proceeding on the grounds of international abstention.

I agree with SOPO, however, that the Lanham Act, even in conjunction with the Paris Convention, does not provide a federal cause of action for trade secret misappropriation, and so I will grant SOPO's motion for judgment on Counts II and VI.  I also agree with SOPO that BP's claim under the Missouri Uniform Trade Secrets Act must fail because it is based on allegations of misappropriation that began before MUTSA was effective.  I will therefore grant the motion for judgment on the pleadings as to Count III.

I.  **Background**

This case has twice already gone to the Court of Appeals, and the reported decisions, BP Chemicals, Ltd. v. Jiangsu SOPO Corp., 285 F.3d 677 (8th Cir. 2002) (BP I) and BP Chemicals, Ltd. v. Jiangsu SOPO Corp. (Group), 420 F.3d 810 (8th Cir. 2005) (BP II), set out its factual and procedural background.

Plaintiff BP Chemicals Ltd. is a British corporation with its principal place of business in London, England.  Among other businesses, BP is involved in the design and construction of commercial plants used to manufacture acetic acid through a process known as methanol carbonylation.  Since BP acquired the rights in 1986, it has licensed rights to use its methanol carbonylation process to other acetic acid plants in numerous countries.  BP has taken extensive steps to maintain the proprietary nature of its acetic acid technology.

Defendant Jiangsu SOPO Corporation (Group) Ltd. is a Chinese state-owned petrochemical company. SOPO is the owner of the "921 plant," which is an acetic acid plant located in Zhenjiang City, Jiangsu Province, People's Republic of China. Production at the 921 plant began in 1998. SOPO is a large enterprise which has significant ties to the local Chinese Communist Party.

BP alleges that SOPO, acting with others, unlawfully obtained access to BP's acetic acid technology and that SOPO copied the specifications for its 921 plant from one of BP's licensed plants in Asia. According to BP, SOPO disclosed the wrongfully acquired trade secrets to a number of vendors in the United States, who used BP's stolen trade secrets to fabricate and provide items for SOPO's use in the 921 plant.

In March 2004, I denied SOPO's motion to dismiss, which alleged immunity under the Foreign Sovereign Immunities Act and lack of personal jurisdiction. I also denied SOPO's request for dismissal on grounds of <u>forum non conveniens</u>. Based on an extensive evidentiary record, I concluded that the courts of China would not provide an adequate forum for BP's claims and that, even if China were an adequate alternative forum, the balance of public and private interests weighed in BP's favor. SOPO appealed the jurisdictional ruling, and the Eighth Circuit, in BP II, affirmed my ruling on both FSIA immunity and personal jurisdiction, and remanded for

further proceedings. The <u>forum</u> <u>non</u> <u>conveniens</u> decision was not considered in the appeal.

While the appeal was pending, BP filed suit in the Shanghai High People's Court in the People's Republic of China against SOPO and others. The bill of indictment requests the court to order defendants to: (1) immediately stop infringing BP's business secrets; (2) immediately stop infringing BP's copyright; (3) pay compensation for BP's loss; (4) publicly apologize to BP; and (5) bear the legal costs and attorney's fees of the Chinese court action. On September 8, 2005, the Chinese court accepted the case and issued a Notice of Response to Action.

After this case had been remanded from the Eighth Circuit, SOPO moved to dismiss on international comity or <u>forum</u> <u>non</u> <u>conveniens</u> grounds, citing BP's recent filing in China. Alternatively, SOPO seeks a stay on the grounds of international abstention, pending the conclusion of the Shanghai suit.

## II.    **Motion to Dismiss or Stay**

### A.    **International Comity**

SOPO argues that I should defer to the Chinese court that is now considering BP's new case. It contends that international comity requires this Court to show respect to foreign nations and to avoid litigation in two court systems that could lead to conflicting judgments.

The Supreme Court has explained international comity as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895). "'Comity refers to deference to another sovereign's definite law or judicial decision' and not to pending proceedings." Abdullah Sayid Rajab Al-Rifai & Sons W.L.L. v. McDonnell Douglas Foreign Sales Corp., 988 F. Supp. 1285, 1290 n. 3 (E.D. Mo. 1997) (quoting Dragon Capital Partners v. Merrill Lynch Capital Serv., Inc., 949 F. Supp. 1123, 1126 n. 8 (S.D.N.Y. 1997)).

Because no definite judicial decision has been reached in the Shanghai Court action, international comity does not apply. Even the case cited by SOPO in its memorandum in support, Turner Entm't Co. v. Degeto Film GmbH, discussed comity in the context of deference to a judgment on the merits that had been reached in a foreign court. 25 F.3d 1512 (11th Cir. 1994). International comity suggests deference to judicial decisions, not to pending actions.

### B.    Forum Non Conveniens

The doctrine of forum non conveniens requires a balancing of "the plaintiff's privilege of choosing his forum ... against that forum's convenience for the parties and the court." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1352 (3d ed. 2004).  The balance must be strongly in favor of the defendant in order to upset plaintiff's choice of forum.  Reid-Walen v. Hansen, 933 F.2d 1390, 1394 (8th Cir. 1991) (citing Lehman v. Humphrey Cayman, Ltd., 713 F.2d 339, 342 (8th Cir. 1983)).  Based on the presumption that an alternative adequate forum exists, the forum non conveniens decision requires analysis of private and public factors.  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).

In my March 29, 2004 Order I examined in great detail the application of the doctrine of forum non conveniens to the facts of this case.  Most of SOPO's newly-filed evidence is redundant of evidence submitted earlier and presents little change to the analysis of the public and private interest factors.  The only new information that is material to this analysis is the notice of a parallel proceeding, voluntarily filed by BP and currently pending in Shanghai High People's Court.

SOPO argues that BP is estopped from challenging the adequacy of the Chinese court system since it voluntarily filed suit there.  SOPO cites cases where the foreign proceeding was filed before the U.S. court proceeding.  See EFCO Corp. v. Aluma Systems USA, Inc., 268 F.3d 601 (8th Cir. 2001) (affirming dismissal of action based on forum non conveniens where suit was initially filed in Canada and could be refiled there without prejudice); Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc., 949 F.Supp. 1123, 1128 (S.D.N.Y. 1997) (suit dismissed in deference to previously filed action in Hong Kong).  The cases SOPO

cites are unlike this one because here suit was originally filed in the United States, and the Chinese suit was not filed until six years later.

One of the private interest factors in the <u>forum non conveniens</u> analysis is the level of deference due to the plaintiff's choice of forum. <u>See Reid-Walen</u>, 933 F.2d at 1394. According to the Supreme Court, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." <u>Gulf Oil</u>, 330 U.S. at 508. Some cases decided after <u>Gulf Oil</u> have held that foreign plaintiffs are entitled to less deference in their choice of forum than plaintiffs who are citizens or residents of the United States. <u>See, e.g., Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 256 n. 23 (1981). As I noted in footnote 1 of my March 29, 2004 Order, however, and as is discussed in more detail <u>infra</u>, the Paris Convention requires that foreign nationals be given the same rights as citizens in bringing suits such as this, and BP's choice is entitled to the same deference as a U.S. citizen's would receive.

BP's filing suit against SOPO in a Chinese court after arguing to this Court that it could not get a fair trial there could be interpreted as forum shopping. The Supreme Court has pointed out that one of many attractive factors of American courts to foreign plaintiffs is that generally "discovery is more extensive in American than in foreign courts." <u>Piper</u>, 454 U.S. at 252 n. 18. According to the Second Circuit's sliding-scale method for evaluating the level of deference, the more

it appears that plaintiff's choice of forum is based on forum-shopping reasons, the less deference should be given to that choice.  See Iragorri v. United Technologies Corp., 274 F.3d 65 (2nd Cir. 2001).  SOPO argues that BP is now simply using this case to obtain discovery it could not get in China.  I do not know BP's motivation for filing the new Chinese suit, but its actions in this case convince me that it is vigorously seeking to enforce its rights under American law, and that it is not improperly forum shopping.

The parallel proceeding in China does not change the inadequacy of the Chinese forum for a trial of BP's claims.  No matter how the forum non conveniens public and private factors are affected, this case continued to present one of the rare situations where no adequate alternative forum exists.  SOPO carries the burden of persuasion in proving "all elements necessary for the court to dismiss a claim based on forum non conveniens."  Reid-Whalen, 933 F.2d at 1393.  SOPO has not met that burden, and I will deny the motion to dismiss.

## C.    International Abstention

As an alternative to dismissal, SOPO seeks a stay of this matter on the grounds of international abstention, pending a resolution of the dispute filed by BP in China.[1]  Generally, parallel proceedings on the same claims should be allowed to

---

[1] Dismissal on the grounds of international abstention would not be appropriate here because BP seeks monetary relief, not equitable or discretionary relief.  See Abdullah, 988 F. Supp. at 1290-91("The Eighth Circuit has recognized that in actions at law, the court does not

proceed simultaneously.  See Abdullah, 988 F.Supp at 1291.  However, a federal

court may stay an action in favor of pending foreign litigation "in the interests of

judicial economy and international relations."  Id.  Multiple factors should be

evaluated in determining whether a stay based on international abstention is

appropriate, including:  "the similarity of the two actions, the degree of progress

already made in the [foreign] action, the adequacy and appropriateness of the

[foreign] forum, and notions of international comity and judicial efficiency."

Boushel v. Toro Co., 985 F.2d 406, 410 n. 2 (8th Cir. 1993) (citing Caspian Inv.,

Ltd. v. Vicom Holdings, Ltd., 770 F. Supp. 880, 883-85 (S.D.N.Y. 1991)).

### 1.    The Similarity of the Two Actions

SOPO argues that BP's Chinese claims fully encompass those at issue here.

BP responds that the claims brought in this case are "U.S.-based claims" that arise

under U.S. law and are founded on the wrongful disclosure of trade secrets to U.S.

vendors.  It argues that the claims brought in the Shanghai Court are "China-based

claims" that are founded on the wrongful acquisition of trade secrets, including the

theft of the secrets and the ongoing misuse of them.

In both cases, foreign and domestic, BP seeks relief for the injury it has

suffered as a result of the alleged misappropriation of trade secrets used in the

---

have power to dismiss an action based on abstention principles.")(citing Warmus v. Melahn, 110
F.3d 566, 567 (8th Cir. 1997)).

creation of the 921 plant.  The Bill of Indictment from the Shanghai Court action states claims based on the misappropriation of the same trade secrets.  These lawsuits are sufficiently similar actions for purposes of international abstention.  The issues and parties are substantially similar such that this factor of the analysis favors the granting of a stay.

## 2. Degree of Progress Already Made in the Other Action

SOPO submitted a declaration from a Chinese law professor familiar with China's judicial system who states that most cases involving foreign parties are adjudicated within one year of acceptance by a Chinese court.  If this is correct, the Shanghai Court would rule by Fall of 2006 on BP's claims, while the case here is not set for trial until September of 2007.  However, the law professor admits that there is <u>no</u> time limit under China's laws of civil procedure for cases involving a foreign party.  The previous proceeding in Zhenjiang Intermediate Court, filed by SOPO against BP, took over three years for resolution.  Additionally, the only reason this case is set for the Fall of 2007 is that the parties indicated they needed that amount of time for discovery and trial preparation.  My trial docket is not at all congested, and I could reach the case for trial much sooner if the parties were ready.

The Shanghai Court action was filed on July 25, 2005.  The action pending in this Court was filed on February 26, 1999.  Despite the Chinese law professor's

declaration, there is no reason for this Court to believe that the proceeding in China has progressed further than has this case. This factor does not favor a stay.

### 3. The Adequacy and Appropriateness of the Foreign Forum

As stated in my analysis of <u>forum</u> <u>non</u> <u>conveniens</u>, the courts in China are not an adequate forum for the adjudication of BP's stated claims. Just because a court in China may resolve a matter more expeditiously does not make it the more adequate and appropriate forum. This factor weighs against a stay of this case.

### 4. Judicial Efficiency and Deference to Foreign Proceedings

As stated above, principles of international comity do not apply here because no formal judgment has been reached in the Shanghai Court action. A stay of this action will not promote judicial efficiency. Although the actions are similar, resolution of the issues in the Chinese court would not resolve the issue here of wrongful disclosure of trade secrets to U.S. vendors. Additionally, there are no complex issues of local Chinese law present in this case that would suggest this Court should defer to the Chinese court for evaluation. The claims here are based on U.S., not Chinese, law.

Overall three of the four factors for international abstention suggest that a stay is not appropriate in this case. SOPO's motion to dismiss or stay will be denied.

### III.   **Motion for Judgment on the Pleadings or Summary Judgment**

SOPO also filed a motion for judgment on the pleadings or for summary judgment on BP's Lanham Act and MUTSA claims.  The relevant counts of the complaint are: Count II, which seeks relief for unfair competition under the Lanham Act and the Paris Convention; Count III for misappropriation of trade secrets in violation of the Missouri Uniform Trade Secrets Act; and Count VI for attorneys' fees under the Lanham Act.

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law.  <u>Roemhild v. Jones,</u> 239 F.2d 492, 494 (8th Cir. 1957).  When considering a motion for judgment on the pleadings, the court may consider the pleadings and public records that do not contradict the complaint.  <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (citation omitted).

#### A.   **Lanham Act Claims**

Count II of BP's complaint alleges that SOPO's misappropriation of trade secrets is actionable unfair competition under the Lanham Act and the Paris

Convention.  SOPO moves for judgment on this claim and on the related claim for attorneys' fees in Count VI.

BP argues that the combination of Section 44 of the Lanham Act and the Paris Convention confers a federal right to sue for acts of unfair competition and "invoke[s] federal and state law rights and remedies in pursuing a federal cause of action in federal court."  BP goes on to allege that misappropriation of trade secrets in violation of Missouri law constitutes an act "contrary to honest practices" covered by the Paris Convention.  Understanding how BP can argue that the Lanham Act gives it the right to sue for misappropriation of trade secrets requires following a somewhat confusing statutory path.

Section 44(b) of the Lanham Act refers to foreign nationals whose country  is party to a convention or treaty with the United States:

> Any person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be <u>entitled to the benefits of this section</u> under the conditions expressed herein <u>to the extent necessary to give effect to any provision of such convention</u>, treaty or reciprocal law, <u>in addition to</u> the rights to which any owner of a mark is otherwise entitled by this chapter.

15 U.S.C. § 1126(b) (emphasis added).  Section 44(h) then refers back to subsection (b):

> Any person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to

> effective protection against unfair competition, and the remedies
> provided in this chapter for infringement of marks shall be available so
> far as they may be appropriate in repressing acts of unfair competition.

15 U.S.C. § 1126(h) (emphasis added).

The Paris Convention for the Protection of Industrial Property, to which the United States and the United Kingdom are parties, requires signatory nations to prohibit unfair competition:

> (1) The countries of the Union are bound to assure to nationals of such countries effective protection against unfair competition.
>
> (2) Any act of competition contrary to honest practices in industrial or commercial matters constitutes an act of unfair competition.

July 14, 1967, art. 10bis, 21 U.S.T. 1583 (emphasis added).

The argument that the combination of the Paris Convention and the Lanham Act creates a federal claim for unfair competition has been considered by a number of different courts, and, depending on the context of the cases, those courts have reached different results. Having reviewed the cases, arguments, and – most importantly – the statutory language, I conclude that the Lanham Act incorporates the substantive law of the treaties to which it refers, in this case the Paris Convention, and provides foreign nationals the rights available under that treaty. The Paris Convention, however, does not create a general tort of unfair competition, and it therefore provides BP no protection against trade secret misappropriation. Additionally, to the extent that BP argues that the Paris Convention somehow

incorporates the state law of unfair competition, which can then be brought as a Lanham Act claim, I disagree.

According to its plain terms, the Lanham Act's protections only extend to infringement of registered trademarks, 15 U.S.C. § 1114; false designation of the origin of goods, 15 U.S.C. § 1125(a); and false advertising, 15 U.S.C. § 1125(a). In the decade or two after the Lanham Act was initially passed, courts defined the scope of the Act by rejecting a variety of arguments that it created a federal claim for unfair competition, providing protection beyond the express terms of the Act. The Eighth Circuit's only venture into this area, <u>Iowa Farmers Union v. Farmers' Educational and Co-operative Union</u>, 247 F.2d 809 (8th Cir. 1957), is an example. In a case between domestic, non-diverse parties, the Court held that although the Lanham Act authorized an injunction prohibiting unfair competition using a trademark, it did not create jurisdiction or a remedy for unfair competition when there is no underlying violation of the Act. <u>Id.</u> at 819. Other courts reached similar results during the same era. <u>See, e.g.</u>, <u>Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc.</u>, 240 F.2d 814 (5th Cir. 1957); <u>L'Aiglon Apparel, Inc. v. Lana Lobell, Inc.</u>, 214 F.2d 649 (3d Cir. 1954); <u>American Auto Ass'n v. Spiegel</u>, 205 F.2d 771 (2d Cir. 1953).[2]

---

[2]<u>But</u> <u>see</u> <u>Stauffer v. Exley</u>, 184 F.2d 962 (9th Cir. 1950)(Lanham Act provides remedy for unfair competition that affects interstate commerce).

These early cases clarified that the Lanham Act alone does not create a federal cause of action for unfair competition. The cases involved only domestic litigants. Later cases involving foreign national parties required courts to examine the interplay between the Lanham Act and international treaties, and to determine if together they create a federal cause of action for unfair competition.

For example, in a case relied on by both parties in their briefs, Toho Co., Ltd. v. Sears, Roebuck & Co., the Ninth Circuit analyzed the relationship between § 44 of the Lanham Act and the Treaty of Friendship, Commerce and Navigation entered into between the United States and Japan. 645 F.2d 788, 792 (9th Cir. 1981). Toho was a suit by the Japanese owner of "Godzilla" movies and merchandise against an American company who marketed "Bagzilla" garbage bags. The Ninth Circuit held that there was no likelihood that consumers would be confused about the origin of the goods. It dismissed the plaintiff's claims under § 43(a) of the Lanham Act, and also held that the defendant had not violated California's anti-dilution statute or California's common-law prohibition on misappropriation. In terms of the relationship between § 44 of the Lanham Act and the Treaty of Friendship, Commerce and Navigation, the court concluded that the treaty required "only that Japanese companies be treated as favorably as domestic companies." It then went on to hold that since domestic companies have protection under state laws of unfair competition, "the practical effect of section 44 and this treaty is to provide a federal

forum in which Toho can pursue its state claims." 645 F.2d at 793. Because the plaintiff could not recover under California law, however, it had no remedy under the Lanham Act.

The language of Toho supports the positions of both parties in this case, although both also seek to distinguish it, and even the Ninth Circuit has limited its application to its facts. To the extent that Toho interprets and applies the Lanham Act alone, it has relevance to this case. Its analysis of the interaction of the Treaty of Friendship with the Lanham Act is not applicable to this case however, because this case involves the Paris Convention. More recent cases have looked at whether § 44 provides "national treatment" – giving the foreign national the same rights afforded U.S. citizens – or creates new federal rights for foreign nationals and/or U.S. citizens, and many of those cases have specifically considered the Paris Convention.

According to the cases following the national treatment approach, the Lanham Act incorporates the provisions of the Paris Convention, but only to give foreign nationals the same rights that U.S. citizens have under the Act. See Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 484-85 (2d Cir. 2005); Grupo Gigante SA de CV v. Dallo & Co., Inc., 391 F.3d 1088, 1099-00 (9th Cir. 2004); Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 908 (9th Cir. 2002); Int'l Café, S. A. L. v. Hard Rock Café Int'l Inc., 252 F.3d 1274, 1277-78 (11th Cir. 2001);

Taiwan Semiconductor Mfg. Co., Ltd. v. Semiconductor Mfg. Int'l Corp., No. C-03-5761 MMC, slip op. at 6 (N.D. Cal. Apr. 21, 2004).  All of these cases cite to an earlier Second Circuit case, Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir. 1956), for their underlying interpretation of the Paris Convention.

According to Vanity Fair, the Paris Convention's purpose was to require signatory nations to provide the same treatment to foreign nationals as they provide their own citizens:

> The [Paris] Convention is essentially a compact between the various member countries to accord in their own countries to citizens of the other contracting parties trade-mark and other rights comparable to those accorded their own citizens by their domestic law.  The underlying principle is that foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens.

234 F.2d at 640.  See also  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 29:25 (4th ed. 2006).  This underlying principle is derived from the Convention's provision establishing equal treatment for foreign nationals:

> Nationals of any country of the Union shall, as regards the protection of industrial property, enjoy in all the other countries of the Union the advantages that their respective laws now grant, or may hereafter grant, to nationals ... Consequently, they shall have the same protection as the latter, and the same legal remedy against any infringement of their rights ...

July 14, 1967, art. 2, 21 U.S.T. 1583.  Courts following Vanity Fair have concluded that the "Paris Convention does not provide substantive rights but ensures 'national

treatment.'" Mattel, 296 F.3d at 908 (quoting 4 McCarthy § 29:25). So if the Lanham Act alone does not provide protection against misappropriation of trade secrets for U.S. citizens, it does not provide any greater protection for foreign nationals under the Paris Convention.

A few courts have applied the new federal rights approach, and have held that substantive rights are created by the Paris Convention's broad statement that signatories must provide "effective protection against unfair competition." Article 10bis. See Litton Systems, Inc. v. Ssangyong Cement Indus. Co., Ltd., Nos. 96-1034, 96-1047, 1997 WL 59360, 1997 U.S. App. LEXIS 2386 (Fed. Cir. Feb. 13, 1997)(unreported; applying 9th Cir. law from Toho); General Motors Corp. v. Ignacio Lopez De Arriortua, 948 F. Supp. 684 (E.D. Mich. 1996); Majorica, S.A. v. Majorca Int'l, Ltd., 687 F. Supp. 92 (S.D.N.Y. 1988); Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc., 585 F. Supp. 1286 (S.D.N.Y. 1984).

The language of § 44(b) of the Lanham Act gives foreign nationals whose countries are parties to treaties rights "in addition to" the rights to which they would otherwise be entitled under the Lanham Act. This "in addition to" language, along with § 44(h), must have been intended to give foreign nationals something more than regular rights under the Lanham Act. So to the extent that the new federal rights approach finds that the protections of the Lanham Act could be expanded by a treaty

or convention, I agree. But on the next analytical step, I agree with the national treatment cases' conclusion that the Paris Convention does not create new rights; it only requires equal treatment.

Section 44 provides a new federal cause of action only to the extent the Paris Convention or some other treaty would provide such a right. The "unfair competition" language contained in both the Paris Convention and in § 44(h) does not specify what types of unfair competition are referred to, and there is no reference to misappropriation of trade secrets. Although the Convention refers to "any act contrary to honest practices," this language is too general to include all possible torts of unfair competition recognized by any state's common or statutory law. Neither the Lanham Act nor the Paris Convention makes any reference to state law, and again, the reference simply to "unfair competition" is not sufficient to incorporate all fifty states' laws of unfair competition into the Lanham Act. The Paris Convention forbids national discrimination, but it does not give foreign nationals or those suing them greater rights than domestic litigants have.

I conclude that the Lanham Act and Paris Convention do not create a cause of action for misappropriation of trade secrets, and so I will grant judgment on the pleadings to SOPO on Counts II and VI, which are BP's claims arising under the Lanham Act.

## B.    MUTSA Claims

SOPO also seeks judgment on BP's Missouri Uniform Trade Secrets Act claim, which is Count III of the second amended complaint.  SOPO argues that BP's allegations of misappropriation pre-date the effective date of MUTSA, which is not retroactive.  In response, BP states that it has not had time to complete discovery and establish exactly when acts of misappropriation occurred, specifically acts in conjunction with 'SOPO 2', a second acetic acid plant allegedly constructed using BP's proprietary technology.

The Missouri Uniform Trade Secrets Act (MUTSA), Mo. Rev. Stat. § 417.450 et seq., is intended to "mak[e] uniform the law with respect to the subject of trade secrets."  Mo. Rev. Stat. § 417.465.  MUTSA does not apply "to a continuing misappropriation that began prior to August 28, 1995."  Mo. Rev. Stat. § 417.467.   The Act contains no definition of 'continuing misappropriation' but does define 'misappropriation':

> (a) Acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (b) Disclosure or use of a trade secret of a person without express or implied consent by another person ...

Mo. Rev. Stat. § 417.453.  The claims BP asserts here allege disclosure-type

misappropriation, specifically that SOPO disclosed BP's wrongfully acquired

secrets to U.S. vendors.

BP does not dispute that the misappropriation of trade secrets by SOPO

began before August 28, 1995.  Instead, BP argues that its MUTSA claim should

survive because its allegations are not limited to SOPO's 921 plant activities.  BP's

'SOPO 2' allegations concern more recent activities in connection with SOPO's

procurement of equipment, which BP alleges occurred in the 2000-2003 time frame:

> 67.    ... SOPO Engineering also has a contract with SOPO to
> build a second acetic acid plant or to expand the existing plant.  In
> connection with that contract, SOPO Engineering, on behalf of SOPO,
> has had direct contact with U.S. vendors about supplying equipment
> for the second plant.

Second Am. Compl.  BP blames its lack of specific information about this claim on

SOPO's resistance to BP's discovery attempts.  BP argues that if a second acetic

acid plant was constructed with BP's trade secret technology, this would implicate

post-1995 violations that are "separate and independent" from SOPO's

misappropriation of trade secrets in connection with the 921 Project.

In my earlier order, I found that SOPO participated in meetings in the U.S.

where specifications copied from BP's trade secrets were discussed.  Many of these

meetings occurred in 1994, before the MUTSA effective date in August of 1995.

BP has always maintained that it is the disclosure of its trade secrets in the United

States that constituted the MUTSA violation.  See BP I, 285 F.3d at 683-84.

However, a disclosure-type MUTSA violation requires that the disclosed trade

secret be acquired through some form of improper means in the first place.  As

another court held in a similar action brought by BP:  "[U]nder the plain language of

[MUTSA], an improper acquisition is a necessary part of the act which constitutes

the misappropriation.  The two actions, improper acquisition and disclosure, are

necessarily linked together in order to amount to a misappropriation."  BP

Chemicals Ltd. v. Baloun, 183 F. Supp. 2d 1158, 1163 (E.D. Mo. 2000).

Even if SOPO used the misappropriated trade secrets to build the SOPO 2

plant, that would still be a continuation of the same wrongful conduct.  The statute

specifically states that if a misappropriation began before the effective date, the Act

cannot apply to continuing misappropriation that occurs after that date.  This non-

retroactivity language covers the situation where a party wrongfully acquires trade

secrets before the effective date but then wrongfully discloses them after the

effective date.  For purposes of the statute, it matters not whether further discovery

shows that SOPO has built one or twenty acetic acid plants using BP's methanol

carbonylation process trade secrets:  all of the plants, and all of the disclosures of

trade secrets related to their construction, stem from the same wrongful acquisition

of the same trade secrets, and that undoubtedly occurred before the effective date of

the act.  BP therefore cannot state a claim for violation of MUTSA, and I will grant judgment to SOPO on Count III.

## IV.     Conclusion

Dismissal based on <u>forum non conveniens</u> continues to be inappropriate in this case.  The courts of China are an inadequate alternative forum and the balance of public and private interests are not strongly in favor of SOPO.  Also, dismissal based on international comity is not suitable here because formal judgment has not been rendered in the alternative forum.  Based on a weighing of the factors for international abstention, I will not enter a stay in this case.  This Court has already invested significant time and resources into this case, while the Shanghai action has only recently been filed.  However, I will grant SOPO's request for judgment on the pleadings as to BP's Lanham Act and MUTSA claims.

Accordingly,

**IT IS HEREBY ORDERED** that SOPO's motion to dismiss on international comity and forum non conveniens grounds, or in the alternative, motion to stay on international abstention grounds [#287] is DENIED.

**IT IS FURTHER ORDERED** that SOPO's motion for judgment on the pleadings, or in the alternative, for summary judgment on plaintiff's Lanham Act and

MUTSA Claims [#285] is GRANTED.  Counts II, III, and VI of BP's second

amended complaint are dismissed.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of <u>April</u>, 2006.